**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**CEDAR RAPIDS DIVISION**

WEEMS INDUSTRIES, INC. d/b/a
LEGACY MANUFACTURING
COMPANY,

              Plaintiff,

vs.

TEKNOR APEX COMPANY,

              Defendant.

No.  C20-108-LTS

**MEMORANDUM OPINION AND
ORDER ON CROSS-MOTIONS
FOR PARTIAL SUMMARY
JUDGMENT**

## I.   INTRODUCTION

This case is before me on cross-motions (Doc. 162, 165) for partial summary judgment by defendant Teknor Apex Company (Teknor) and plaintiff Weems Industries, Inc. (Weems).  Weems requested oral argument, but I find it unnecessary.  *See* Local Rule 7(c).

Weems filed its complaint (Doc. 1) on November 13, 2020, and filed an amended complaint (Doc. 21) on February 9, 2021.  Weems asserts the following claims:

    (1)    trademark infringement under the Lanham Act, 15 U.S.C. § 1114(1);

    (2)    common law trademark infringement under the Lanham Act, 15 U.S.C. § 1125(a);[1]

    (3)    unfair competition under the Lanham Act, 15 U.S.C. § 1125(a);

    (4)    unfair competition under Iowa common law; and

---

[1] A common law trademark infringement claim may be brought under state or federal law. *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 30 (2003) (noting that § 1125(a) "create[ed] a federal cause of action for traditional trademark infringement of unregistered marks").  Although the trademark Weems seeks to protect from infringement is registered, it brings common law infringement under § 1125 as an alternative claim.

(5)     unjust enrichment.

Doc. 21.  Teknor filed an answer and counterclaim (Doc. 39) on June 1, 2021, asserting nine affirmative defenses and 11 counterclaims.

## II.     RELEVANT FACTS

Weems is an Iowa corporation that manufactures and sells hose products through its subsidiary, Legacy Manufacturing Company.  Many of these hoses are chartreuse-colored and Weems asserts it has "maintained substantially exclusive use of the chartreuse color as applied to the body of its water hoses since 2009."  Doc. 166 at 3.  Weems first trademarked its use of the color chartreuse in 2010.  Doc. 171-3 at 22.  Between 2010 and 2017, Weems registered various color-based trademarks related to its hoses.  At issue is Registration No. 5,293,921 (the 921 Registration), which the United States Patent and Trademark Office (USPTO) registered in September 2017.

The trademark image is displayed on the registration as follows:



Doc. 171-1 at 162.  The registration describes the trademark as follows:

> The mark consists of the color Chartreuse as applied to the exterior of the hose body of the goods wherein the color Chartreuse appears on the entire surface of the body of the hose.  The color white in the mark is not part of the mark, but is used merely to indicate a functional part of the hose that is not claimed as part of the mark.  The dotted outline of the goods is intended to show the position of the mark on the goods and is not part of the mark.

Doc. 171-1 at 162.  Weems has termed the color of its hoses "ZillaGreen™" and has adopted the slogan, "If it's not ZillaGreen®, it's not Flexzilla®."  Doc. 39 at 4-5.

Teknor is a Delaware corporation that also produces and sells various types of hoses. On July 25, 2018, Weems sent Teknor a letter stating:

> It has come to our attention that Teknor Apex Company, Inc. may have plans to introduce a new chartreuse or similarly colored water hose into the market.

> Please be advised that our client owns United States Trademark Registration No. 5,293,921 covering the color chartreuse as applied to the body of water hose [sic] . . . . Please know that your failure to confirm the above in a satisfactory manner will be viewed by our client as willful infringement of its trademark.

Doc. 39-1. Teknor subsequently introduced two hoses onto the market. On January 2, 2019, it introduced the NexFlex® hose and on January 9, 2019, it introduced the zero-G® Pro hose, both of which Weems argues are confusingly similar in color to Weems' chartreuse hoses. Doc. 21 at 4; Doc. 39 at 33.

 

On March 5, 2020, Teknor filed a petition to cancel Weems' 921 Registration. Doc. 39-14 at 1.

### III.    SUMMARY JUDGMENT STANDARDS

Any party may move for summary judgment regarding all or any part of the claims asserted in a case. Fed. R. Civ. P. 56(a). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with

3

affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A material fact is one that "'might affect the outcome of the suit under the governing law.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, "the substantive law will identify which facts are material." *Id.* Facts that are "critical" under the substantive law are material, while facts that are "irrelevant or unnecessary" are not. *Id.*

An issue of material fact is genuine if it has a real basis in the record, *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), or when "'a reasonable jury could return a verdict for the nonmoving party' on the question." *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (quoting *Anderson*, 477 U.S. at 248). Evidence that only provides "some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, or evidence that is "merely colorable" or "not significantly probative," *Anderson*, 477 U.S. at 249-50, does not make an issue of material fact genuine.

As such, a genuine issue of material fact requires "sufficient evidence supporting the claimed factual dispute" so as to "require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 248-49. The party moving for entry of summary judgment bears "the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel*, 953 F.2d at 395 (citing *Celotex*, 477 U.S. at 323). Once the moving party has met this burden, the nonmoving party must go beyond the pleadings and by depositions, affidavits, or otherwise, designate specific facts showing that there is a genuine issue for trial. *Mosley v. City of Northwoods*, 415 F.3d 908, 910 (8th Cir. 2005). The nonmovant must show an alleged issue of fact is genuine and material as it relates to the substantive law. If a party fails to make a sufficient showing of an essential element of a claim or defense with respect to which that party has the burden of proof,

4

then the opposing party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 322.

In determining if a genuine issue of material fact is present, I must view the evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587-88. Further, I must give the nonmoving party the benefit of all reasonable inferences that can be drawn from the facts. *Id.* However, "because we view the facts in the light most favorable to the nonmoving party, we do not weigh the evidence or attempt to determine the credibility of the witnesses." *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004). Instead, "the court's function is to determine whether a dispute about a material fact is genuine." *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372, 1376-77 (8th Cir. 1996).

## IV.    ANALYSIS

Neither party seeks summary judgment on the substantive claims in Weems' complaint. Rather, Weems seeks summary judgment on two of Teknor's affirmative defenses and three of its counterclaims.[2] Doc. 165-1 at 2. The affirmative defenses are:

(1)    Fair Use and Non-Trademark Use (Seventh Affirmative Defense)

(2)    Abandonment of Trademark Registration (Eighth Affirmative Defense)

The counterclaims are:

(1)    Cancellation Based on Abandonment (Counterclaim Count V)

---

[2] Weems also sought summary judgment on Teknor's affirmative defense of estoppel by acquiescence (Ninth Affirmative Defense). Teknor then withdrew that defense. Doc. 173 at 18. As such, it is no longer part of this case. However, Teknor intends to preserve its right to present evidence of Weems' "unreasonable and inexcusable failure both to respond to substantive issues raised by Teknor that may have resolved the matter promptly and amicably, and its delay in filing suit," claiming that this evidence is relevant to the balancing of the equities in connection with Weems' request for monetary relief. Doc. 173 at 18 (citing 15 U.S.C. § 1117(a)).

5

> (2)    Cancellation Based on Registration Obtained by Fraud
>          (Counterclaim Count VIII)
>
> (3)    Cancellation based on the Creation of an Impermissible
>          Changeable/Phantom Mark (Counterclaim Count X)

Doc. 165-1 at 2.

For its part, Teknor seeks summary judgment on Weems' claims for actual and punitive damages.  I will address each motion in turn.

### A.    *Weems' Motion*

#### 1.    *Fair Use and Non-Trademark Use*

To assert the "classic" fair use defense,[3] Teknor must demonstrate it (1) used the trademark as a descriptor and not as a trademark and (2) did so in good faith.  *See* 15 U.S.C. § 1115(b)(4); *Kelly-Brown v. Winfrey*, 717 F.3d 295, 308 (2d Cir. 2013).  The fair use defense is intended to prevent a party from monopolizing the use of a term that has an ordinary, descriptive meaning.  *KP Permanent Make-Up, Inc, v. Lasting Impression I, Inc.*, 543 U.S. 111, 121-22 (2004).  "The owner's rights in a mark extend only to its significance as an identifying source, not to the original descriptive meanings of a mark, and so where another person uses the words constituting that mark in a purely descriptive sense, this use may qualify as permissible fair use." *Kelly-Brown*, 717 F.3d at 308 (cleaned up).  Cases addressing the classic fair use defense often involve trademarked words or slogans.  *Id.* (debating fair use of the trademarked phrase "Own Your Power"); *see also Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Management, Inc.*, 618 F.3d 1025 (2010) (debating fair use of the trademarked term "Delicious").

---

[3] There are two types of "fair use" defenses in trademark cases: "classic" fair use and "nominative" fair use.  4 McCarthy on Trademarks and Unfair Competition § 23:11.  Neither party suggests nominative fair use is at issue.

6

Weems argues Teknor has not established its fair use of the trademarked color. Doc. 166 at 11. Teknor argues fair use is not limited to word-based trademarks and "a defendant may raise the fair use defense that it is not using the color as a trademark, but merely in its ornamental or functional sense." Doc. 173 at 8-9 (citing *Shakespeare Co. v. Silstar Corp. of America, Inc.,* 802 F. Supp. 1386 (D.S.C. 1993)). Weems does not argue that the fair use defense is limited to word marks but, instead, that it is more difficult to show that a trademark is being used descriptively when it is not a word mark. *See, e.g.*, Doc. 166 at 11-12. ("Thus, for most non-word marks, it is not possible for defendants to argue that it is making a 'descriptive' utilization of a non-word mark. The same is true in the instant case.") (emphasis added).

Therefore, the issue is whether using a color mark in its "ornamental or functional sense" amounts to using the color descriptively. To suggest a trademark is merely ornamental is to attack the validity of the mark. *See Bobosky v. Adidas AG*, 843 F. Supp. 2d 1134, 1143 (D. Oregon 2011) ("But, if a designation is solely ornamental, it cannot be a trademark."); *see also* 1 McCarthy on Trademarks and Unfair Competition § 7:24 (5th ed.) ("If customers perceive a design solely and only as attractive ornamentation, then the design is not a trademark."). The fair use defense assumes the validity of the mark. *See* 15 U.S.C. § 1115(b)(4); *Kelly-Brown v. Winfrey*, 717 F.3d 295, 308 (2d Cir. 2013) ("In order to assert a successful fair use defense to a trademark infringement claim, the defendant must prove three elements: that the use was made (1) other than as a mark, (2) in a descriptive sense, and (3) in good faith."). Consequently, any arguments relating to the validity of Weems' mark are irrelevant to a fair use defense.

In addition, the Lanham Act provides a separate defense for the use of a functional mark. 15 U.S.C. § 1115(b)(8). Generally, functional aspects of a product cannot serve as a trademark. *Qualitex Co. v. Jacobson Products Co., Inc.*, 514 U.S. 159, 170 (1995). Again, fair use assumes the validity of the trademark at issue and Teknor has advanced an argument irrelevant to the fair use defense. Teknor has not demonstrated the color of its hoses has an ordinary, descriptive meaning. While Teknor suggests it does not use

7

the color to indicate its source (which could amount to an impermissible trademarked use), it does not provide an example of permissible use.[4]

Weems also argues it is entitled to summary judgment on Teknor's non-trademark use defense because, while this defense applies to other Lanham Act causes of action, it is inapplicable to trademark infringement. Doc. 166 at 13 (citing 15 U.S.C. § 1114(1)(a) and 4 McCarthy on Trademarks and Unfair Competition § 23:11.50 (5th ed.)). Teknor argues non-trademark use is a distinct affirmative defense to infringement. Doc. 173 at 16. Regardless of whether the Eighth Circuit Court of Appeals recognizes a separate defense of non-trademark use of a mark,[5] Teknor offers only its conclusory statements to suggest it did not use the color in an impermissible way. If any argument on the matter can be gleaned from Teknor's briefing, it is the same argument it advances with respect to the fair use defense: Teknor is using the color of its hoses in a functional or ornamental way, which amounts to defenses unrelated to fair use. Weems is entitled to summary judgment on Teknor's fair use and non-infringing use defenses.[6]

---

[4] Weems cites *Shakespeare Co. v. Silstar Corp.*, 802 F. Supp. 1386, 1396 (D.S.C. 1992), as an example of fair use of a color mark based on a color's functionality. *Shakespeare* is both nonbinding and unpersuasive. At the time it was decided, functionality was not a statutory ground for cancellation. *See* 15 U.S.C. § 1064 (1988). Instead, courts considered functionality as a part of the fair use analysis. *Shakespeare Co.*, 802 F. Supp. at 1396.

[5] The leading treatise on trademarks, repeatedly cited with favor by the Supreme Court, does not recognize "use as a trademark" as an element of trademark infringement. *See* 4 McCarthy on Trademarks and Unfair Competition § 23:11.50 (5th ed.) This is the stance taken by Second, Ninth and Federal Circuits. The Eighth Circuit has not addressed this question. The Sixth Circuit, which is the only circuit to have adopted the view that use as a trademark is an element of trademark infringement, recognizes its unpopularity. *See Sazerac Brands, LLC v. Peristyle, LLC*, 892 F.3d 853, 859 (6th Cir. 2018) ("As Sazerac points out, our threshold test [requiring an infringing use] has drawn criticism."). However, even in that circuit, non-trademark use is not an affirmative defense. Instead, the plaintiff has the burden of establishing "use as a trademark" as an element of trademark infringement. *Id.*

[6] Weems alternatively argues that Teknor cannot assert a fair use defense because fair use requires that Teknor used the mark in good faith and Teknor has asserted from the outset that it is not using Weems' mark. Doc. 166 at 11. Because Teknor has not demonstrated its descriptive

## 2.    *Abandonment of Trademark Registration*

Weems argues it is entitled to summary judgment on Teknor's claim that Weems abandoned its 921 Registration and Teknor's related counterclaim that the trademark should be cancelled based on abandonment.  A trademark has been abandoned when

> its use has been discontinued with intent not to resume such use.  Intent not to resume may be inferred from circumstances.  Nonuse for 3 consecutive years shall be prima facie evidence of abandonment.  "Use" of a mark means the bona fide use of such mark made in the ordinary course of trade, and not made merely to reserve a right in a mark.

15 U.S.C. § 1127.  Typically, abandonment is a question of fact.  *FirstHealth of Carolinas, Inc. v. CareFirst of Maryland, Inc.*, 479 F.3d 825, 830 (Fed. Cir. 2007).  "Abandonment of a trademark, being in the nature of a forfeiture, must be strictly proved."  *Prudential Ins. Co. of America v. Gibraltar Fin. Corp. of Cal.*, 694 F.2d 1150, 1156 (9th Cir. 1982).

I will start by reviewing the history of Weems' various trademark registrations.  Weems filed an application for what became Registration No. 3,765,628 (the 628 Registration) on May 26, 2009.  Doc. 171-2 at 34; Doc. 171-3 at 22.  The application described the proposed trademark as "highlighter yellow Pantone 389C."[7]  Doc. 171-2 at 34.  Weems claimed it had first used the color as early as May 1, 2007.  *Id.*  Weems

---

use of the trademark (or sufficiently demonstrated any other non-trademark use), I need not address this argument.

[7] The Pantone Color System is a commercial system that identifies, and numerically categorizes, specific shades of color.  *See* www.pantone.com/color-systems/pantone-color-systems-explained.  The Pantone system can be used to identify color-based trademarks and their scope.  *See Clam Corp. v. Innovative Outdoor Sols., Inc.*, No. CIV 08-5895 DSD/AJB, 2008 WL 5244845, at *1 (D. Minn. Dec. 15, 2008) (noting that plaintiff registered Pantone 285C, a shade of blue, as a trademark); *Olay Co. v. Cococare Prod., Inc.*, No. 81 CIV. 4102, 1983 WL 62351, at *23 (S.D.N.Y. Apr. 19, 1983) (granting an injunction specifying that defendant's product must be "a discernibly different pink" that is "at least 40% different in terms of [Pantone Matching System] tones").

9

continued to refer to the color at issue as "chartreuse (Pantone 389C)" throughout various correspondence with the USPTO. Pantone 389C is:



The USPTO registered the trademark on March 23, 2010, with the image provided by Weems, and it covered compressed air hoses. Doc. 171-3 at 22.



Doc. 171-3 at 22. The 628 Registration has since been abandoned.

Around the beginning of 2014, Steven Smith, a quality control manager at Weems, noticed the color of the Flexzilla hoses "appeared more green than highlighter yellow." Doc. 171-3 at 39. He began to investigate "what the current color of the Flexzilla hose was and when the color changes of the Flexzilla hose took place." *Id.* Weems determined that by 2011, the Flexzilla hose products were manufactured in Pantone 374C. While Weems considered reverting back to Pantone 389C, it decided against doing so. *Id.* at 40. Weems then instructed its quality control team to ensure the hoses would be produced as Pantone 374C and noted it would instruct all vendors that "ZillaGreen" was Pantone

10

374C, though the trademark reference to 389C would remain the same on its packaging.
Doc. 171-3 at 99. The two colors are as follows:



Pantone 389C (the registered trademark color) (Doc. 39 at 60); Pantone 374C (the color of ZillaGreen as of at least 2011) (Doc. 39 at 61).

Weems filed an additional trademark application[8] for what became Registration No. 4,827,169 (the 169 Registration) on April 14, 2015. Doc. 171-1 at 164. Weems described the mark as:

> The mark consists of the color chartreuse as applied to the entire hose body of the goods. The color white in the mark is not part of the mark but is used merely to indicate a functional part of the hose that is not claimed as part of the mark. The dotted outline of the goods is intended to show the position of the mark on the goods and is not part of the mark.

Doc. 171-1 at 164. The application cited the first use as May 1, 2007, which is the same first-use date as the 628 Registration from 2010. Doc. 171-1 at 164. Weems claimed ownership of the 628 Registration. Doc. 171-1 at 164. The trademark applied to compressed air hoses, just as the 628 Registration.



Doc. 171-2 at 28.

---

[8] This application serial number was 86,596,429, which was filed on April 14, 2015.

On May 17, 2016, Weems filed another trademark application[9] for what became Registration No. 5,292,921 (the 921 Registration). This application sought to trademark the color chartreuse and described the mark as:

> The mark consists of the color Chartreuse as applied to the hose body of the goods wherein the color Chartreuse appears on the surface of the body of the hose. The color white in the mark is not part of the mark, but is used merely to indicate a functional part of the hose that is not claimed as part of the mark.

Doc. 171-1 at 95. This was the description used in the 169 Registration from 2016. Doc. 171-1 at 164. Weems requested the trademark apply to "water hoses, namely, garden hoses, watering hoses and pressure washer hoses." Doc. 171-1 at 95. Weems claimed the color had been used since "[a]t least as early as 05/01/2009." Doc. 171-1 at 96. In this application, Weems claimed ownership of the 169 Registration. *Id.* Further, during the trademark's prosecution, Weems President R. Mark Weems noted the company had "exclusively used the color chartreuse to identify and distinguish Weems Industries' water hose products since at least as early as 2009 and pressure washer hose products since at least as early as 2012." Doc. 171-1 at 103. The USPTO registered the trademark on September 26, 2017.



Teknor argues Weems' copyright is limited solely to Pantone 389C because "[Weems'] admissions in the prosecution history of the 921 Registration and the registrations on which the 921 Registration depends . . . support the conclusion that

---

[9] The application serial number was 87,040,353.

'chartreuse' described in the 921 Registration is limited to the color represented by Pantone 389C." Doc. 173 at 21. Teknor then argues that "Weems ceased using Pantone 389C as of July 19, 2011," and Teknor suggests Weems has abandoned the intent to resume use of Pantone 389C since at least January 30, 2014. Doc. 173 at 25, 28.

There are multiple issues with Teknor's arguments. First, Teknor cites to dates and events that took place before Weems applied for what became the 921 Registration as evidence it has abandoned its use of the trademark. Weems applied for what matured into the 921 Registration in May 2016. Weems argues Teknor began infringing on its rights to the color chartreuse (as protected by the common law and the 921 Registration) beginning in January 2019. *See* Doc. 21 at 4; Doc. 39 at 33. Yet Teknor suggests Weems had abandoned its trademark by 2014, roughly two years before Weems ever filed the relevant registration application.

Further, Teknor argues the 921 Registration does not protect the color depicted in the registration but, instead, Pantone 389C, which is referenced in the abandoned registration from 2010. However, the drawing in the registration represents the mark to be registered. 37 C.F.R. § 2.52. If there is a discrepancy between the drawing and the description, the drawing controls. Trademark Manual of Examination Procedure § 202.01; 3 McCarthy on Trademarks and Unfair Competition § 19:58.50 (5th ed.). Therefore, even if there is a string of references to other colors in various registrations, Teknor must establish Weems abandoned use of the color depicted in the 921 Registration. Teknor does not attempt to do so. Therefore, Teknor has not demonstrated that Weems discontinued its use of the color from the 921 Registration without an intent to resume. Weems is entitled to summary judgment on this defense.

### 3. *Cancellation Based on Registration Obtained by Fraud*

A party may bring a petition at any time to cancel a registration obtained fraudulently. 15 U.S.C. § 1064(3). An applicant procures a trademark by fraud by knowingly making "false, material representations of fact in connection with his

13

application." *Fair Issac Corp. v. Experian Information Solutions, Inc.*, 650 F.3d 1139, 1148 (8th Cir. 2011) (citing *In re Bose Corp.*, 580 F.3d 1240, 1243 (Fed. Cir. 2009) (internal quotation marks omitted). "Because direct evidence of deceptive intent is rarely available, such intent can be inferred from indirect and circumstantial evidence. But such evidence must still be clear and convincing, and inferences drawn from lesser evidence cannot satisfy the deceptive intent requirement." *Id.* "Material information" is information a reasonable examiner would have considered important while making the registration decision. *B&B Hardware, Inc. v. Hargis Industries, Inc.*, 912 F.3d 445, 451 (8th Cir. 2018).

> When submitting a trademark application, the applicant must verify:
>
> (A)    the person making the verification believes that he or she, or the juristic person in whose behalf he or she makes the verification, to be the owner of the mark sought to be registered;
>
> (B)    to the best of the verifier's knowledge and belief, the facts recited in the application are accurate;
>
> (C)    the mark is in use in commerce; and
>
> (D)    to the best of the verifier's knowledge and belief, no other person has the right to use such mark in commerce either in the identical form thereof or in such near resemblance thereto as to be likely, when used on or in connection with the goods of such other person, to cause confusion, or to cause mistake, or to deceive, except that, in the case of every application claiming concurrent use, the applicant shall--
>
> > (i)    state exceptions to the claim of exclusive use; and
> >
> > (ii)    shall specify, to the extent of the verifier's knowledge--
> >
> > > (I)    any concurrent use by others;
> > >
> > > (II)    the goods on or in connection with which and the areas in which each concurrent use exists;
> > >
> > > (III)    the periods of each use; and
> > >
> > > (IV)    the goods and area for which the applicant desires registration.

15 U.S.C. § 1051(a)(3). Because the verification requires a subjective belief, there is no fraud if the person signing the verification has an honestly held, good-faith belief the

14

facts in the application are accurate. *San Juan Products, Inc. v. San Juan Pools of Kansas, Inc.*, 849 F.2d 468, 472 (10th Cir. 1988); 6 McCarthy on Trademarks and Unfair Competition § 31:76 (5th ed.). Therefore, the deception must be willful. *In re Bose Corp.*, 580 F.3d at 1245.[10] The party seeking cancelation bears "a heavy burden of proof." *Id.* "Indeed, the very nature of the charge of fraud requires that it be proven to the hilt with clear and convincing evidence. There is no room for speculation, inference or surmise and, obviously, any doubt must be resolved against the charging party." *Id.* (cleaned up).

Teknor states that its claim "is premised on Weems' fraudulent statement in its April 3, 2017 Office Action Response during the prosecution process – specifically, R. Mark Weems' material misrepresentation to the USPTO that Weems was the exclusive user of the color chartreuse in connection with water hoses since as early as 2009." Doc. 173 at 32. Teknor argues Weems' various statements that "competitors had endeavored to benefit from the good will associated with the mark chartreuse and offer garden hoses in a confusingly similar color" suggest R. Mark Weems knew Weems did not have continuous and substantially exclusive use of the color chartreuse. Doc. 39 at 82-83. Teknor contends that Weems did not qualify his statements, but instead represented them as "unequivocally . . . true." Doc. 173 at 35.

In the referenced Office Action Response, R. Mark Weems declared:

I am making this declaration in the belief that the trademark for the color chartreuse has become distinctive of the water and pressure washer hose products of Weems Industries . . . .

---

[10] Teknor argues an intent to deceive "may be demonstrated by the reckless disregard for the truth or falsity of a material statement." Doc. 173 at 32. Teknor then argues Weems acted with reckless disregard by failing to research the hoses available on the market at that time. Teknor argues that research would have shown there were other hoses on the market using colors that Weems' color expert would suggest infringed on the trademark. Doc. 173 at 35-37. Teknor cites a decision by the Trademark Trial and Appeal Board to support its proposition. However, both the Federal Circuit and the Eighth Circuit have held that an intent to deceive must be willful. *In re Bose Corp.*, 580 F.3d 1240, 1245 (Fed. Cir. 2009); *Aromatique, Inc. v. Gold Seal, Inc.*, 28 F.3d 863, 877-78 (8th Cir. 1994) (per curiam)).

15

In connection with my duties as President, I am familiar with the water and pressure washer hose products covered by the above-identified application and the mark which identifies the water and pressure washer hose products described therein. The information herein is based upon my personal knowledge and belief, and on information from Weems Industries' corporate records . . . .

Weems Industries has exclusively used the color chartreuse to identify and distinguish Weems Industries' water hose products since at least as early as 2009 and pressure washer hose products since at least as early as 2012 . . .

Some of Weems Industries' competitors have endeavored to benefit from the goodwill associated with the mark chartreuse and offer garden hose [sic] in a confusingly similar color. These copycat competitors have not attempted to benefit from the name "Flexzilla" or "Legacy", but rather have attempted to benefit from the goodwill and brand recognition associated with the chartreuse color mark, which further evidences that the mark has indeed gained secondary meaning in the minds of consumers. Applicant continues to address this potential infringement to ensure its exclusive use of its chartreuse color mark.

Doc. 171-1 at 102-06.

This statement does not represent that Weems was the exclusive user of the color chartreuse. Instead, it states that "Weems Industries have exclusively used the color chartreuse *to identify and distinguish Weems Industries' water hose products*." Doc. 163-3 at 288 (emphasis added). It further states that "[t]he information herein is based upon my personal knowledge and belief," undermining Teknor's argument that R. Mark Weems intended to represent his assertions as being "unequivocally . . . true." Doc. 171-1 at 102-06. Teknor does not suggest other sellers had a greater right to use the color chartreuse, nor that Weems made any other material misrepresentations.

Teknor attempts to bolster its argument by suggesting Weems had been deceptive when obtaining other trademarks. For instance, Teknor argues Weems concealed the functionality of the chartreuse color in its other registrations. Teknor claims this alleged pattern of deception—haphazardly argued and plainly unproven—at least creates a triable issue with respect to Weems' intent. I disagree. Teknor bears a "heavy burden" which leaves no room for speculation. *In re Bose Corp.*, 580 F.3d at 1245. Teknor has not

16

produced evidence allowing a finding that Weems fraudulently procured the 921 Registration. Weems is entitled to summary judgment on this claim.

### 4. Cancellation Based on the Creation of an Impermissible Changeable/Phantom Mark

Under the Lanham Act, a trademark registration covers a single mark. *See, e.g.*, 15 U.S.C. § 1051 ("The owner of *a* trademark . . .") (emphasis added); *In re Int'l Flavors & Fragrances, Inc.,* 183 F.3d 1361, 1366 (Fed. Cir. 1999) (International Flowers). Registration of a mark on the principal register provides the public with constructive notice of the mark's ownership. 15 U.S.C. § 1072. "To make this constructive notice meaningful, the mark, as registered, must accurately reflect the way it is used in commerce so that someone who searches the registry for the mark, or a similar mark, will locate the registered mark." *International Flowers*, 183 F.3d at 1368. Therefore, "[a] mark that contains a changeable or phantom element resulting in more than one mark must be refused registration." *In re Society of Health and Physical Educators*, 127 USPQ2d 1584 (TTAB 2018) (citing *In re Primo Water Corp.*, 87 USPQ2d 1376, 1378 (TTAB 2008)); *see also International Flowers,* 183 F.3d at 1368. Most often, these changeable or "phantom" elements represent dates, geographic locations or model numbers that are subject to change. Trademark Manual of Examining Procedure § 1214.

For example, the applicant in *International Flowers* sought registrations for "LIVING xxxx," LIVING xxx FLAVOR" and "LIVING xxxx FLAVORS" for essential oils and flavor substances. *International Flowers,* 183 F.3d at 1364. The "xxxx" served as a placeholder for various herbs, fruits, plants and vegetables. *Id.* For instance, the specimens submitted with the application included images of the marks "LIVING GREEN BELL PEPPER FLAVORS" and "LIVING STRAWBERRY FLAVOR." *Id.* The USPTO rejected the application because the applicant had sought to protect an unknown number of marks. *Id.* at 1365.

Teknor argues "chartreuse is a phantom element of the mark covered by the Asserted Registration because it is an element that by Weems' own admission and assertions is variable, subject to change and covers a wide range of colors." Doc. 39 at 87. Teknor argues "[o]ne of the core issues in this case is what constitutes Weems' chartreuse mark," and "Teknor's assertions go not to infringement, an issue that will be later addressed, but rather the number of different colors 'defined' as chartreuse by Weems." Doc. 173 at 46-48.

As noted above, the drawing in the registration represents the mark to be registered. 37 C.F.R. § 2.52. While Teknor is correct that one asserting trademark rights in a color must specify a particular shade, that does not mean that only that precise shade is protected. *Master Distribs., Inc. v. Pako Corp.*, 986 F.2d 219, 223 (8th Cir. 1993). A color trademark does not, and cannot, "monopolize [a color] 'in all of its shades,'" *id.* at 223, but it does protect its owner from another's use of any similar shade that, when used on identical goods or in similar ways, is likely to cause an ordinary customer to be confused or misled as to the difference between the products or their sources. *See Qualitex*, 514 U.S. at 167; *Luigino's, Inc. v. Stouffer Corp.*, 170 F.3d 827, 830 (8th Cir. 1999). Teknor has not identified a changeable element of the mark, as the mark remains the color depicted in the 921 Registration. Instead, Teknor takes issue with the extent Weems argues that it may enforce the trademark. Teknor has conflated arguments about what the trademark is with arguments about the extent to which it may be enforced. Because Teknor has not demonstrated that Weems' mark amounts to a phantom mark, Weems is entitled to summary judgment on this claim.[11]

---

[11] Teknor cites *API Industries, Inc. v. Poly America, L.P.,* Cancellation No. 92062601 (TTAB), a case in which the Board canceled the trademark at issue on other grounds while suggesting that the trademark holder did not have rights to every shade of orange in existence, as that would amount to an impermissible phantom mark. This citation is off base, as Weems does not suggest it has rights to every shade of green.

*B.*     *Teknor's Motion*

*1.*     *Actual Damages*

Teknor argues Weems has not demonstrated it suffered any actual damages as a result of Teknor's alleged infringement. Weems counters that "[t]he law views the owner of a trademark as damaged by an infringing use 'which places the owner's reputation beyond its control, though no loss in business is shown.'"[12] Doc. 169 at 10. Weems then points to an opinion by Isabella Cunningham, a survey expert, which suggests a likelihood of confusion between Teknor's hoses and Weems' hoses. Weems argues the opinion sufficiently demonstrates actual damage because "harm is 'presumed to be irreparable and the impact to Weems' reputation and goodwill is ongoing'" due to the likelihood of confusion with Teknor's products. Doc. 169 at 11-12 (quoting *Iowa Paint Manufacturing, Inc. v. Hirshfield's Paint Mfg., Inc.*, 296 F. Supp. 2d 983, 1000-01 (S.D. Iowa 2003)).

Weems is wrong. The cases it relies on, such as *Iowa Paint Manufacturing*, presume this harm *at the preliminary injunction stage*, before the parties have commenced discovery.

> It is notoriously difficult for the owner of a trademark to prove measurable damage caused by acts of infringement. This is another reason why provable damage is not required to establish a prima facie case. All that must be proven to establish liability and *the need for an injunction against infringement* is the likelihood of confusion.

5 McCarthy on Trademarks and Unfair Competition § 30:2.50 (5th ed.) (emphasis added). The burden to recover actual damages is higher. *See Lexmark intern., Inc. v. State Control Components, Inc.*, 572 U.S. 118, 135-36 (2014) ("Even when a plaintiff cannot quantify its losses with sufficient certainty to recover damages, it may still be

---

[12] Doc. 169 at 8 (quoting *International Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1091 (7th Cir. 1988)).

19

entitled to injunctive relief under § 1116(a) (assuming it can prove a likelihood of future injury) or disgorgement of the defendant's ill-gotten profits under § 1117(a).").

Under the Lanham Act, a plaintiff must prove damages and prove that the defendant's infringement caused those damages. *Rhone-Poulenc Rorer Pharmaceuticals, Inc. v. Marion Merrell Dow, Inc.*, 93 F.3d 511, 515 (8th. Cir. 1996); *see also Wing Enterprises, Inc. v. Tricam Industries, Inc.*, 511 F. Supp. 3d 957, 973-74 (D. Minn. 2021) ("A plaintiff's burden is at its highest when it seeks monetary damages."). However, courts will draw a distinction between proof of the fact of damage and of the amount, as the plaintiff will generally have a lower burden when proving the amount of damage. *Thompson v. Haynes*, 305 F.3d 1369, 1382 (Fed. Cir. 2002); *Broan Mfg. Co., Inc v. Associated Distributors, Inc.*, 923 F.2d 1232, 1235-36 (6th Cir. 1991). Still, "[i]f plaintiff can prove no actual loss caused by the infringement, it is likely the court will deny a recovery of damages." McCarthy on Trademarks and Unfair Competition § 30:77 (5th ed.).

Weems has put forth no facts to suggest its reputation or goodwill have been damaged. Its President, R. Mark Weems, acknowledged that he could not point to any lost revenues or damage to Weems' reputation due to Teknor's alleged infringement. Doc. 163-2 at 269-70. This is in stark contrast to cases in which plaintiffs have put forth evidence of a decline in sales, or at least that the plaintiff's reputation had suffered. For instance, in *Skydive Arizona, Inc. v. Quattrocchi*, 673 F.3d 1105, 1112 (9th Cir. 2012), the plaintiff presented evidence that customers mistakenly directed their anger to the plaintiff based on actions taken by the defendant (whose infringing mark caused the confusion). Instead, Weems seems to suggest that because proving damages is difficult, the issue should be left to a jury. However, Weems has failed to produce evidence supporting its claim that it has suffered actual damages.[13]

---

[13] Further, Teknor notes that Weems previously represented that it sought only reasonable royalties and disgorgement of profits based on the theory of unjust enrichment. Doc. 163 at 11.

Teknor also argues Weems had not demonstrated it is entitled to a reasonable royalty, as "there is no evidence to indicate that a reasonable royalty would be anything but speculative in this case." Doc. 163 at 19. As Teknor notes, the Eighth Circuit has never explicitly sanctioned the use of a reasonable royalty in trademark infringement cases and the Lanham Act itself does not specify a reasonable royalty as an appropriate award of damages (as it does regarding patent infringement). *Contrast* 15 U.S.C. § 1117(a) *with* 35 U.S.C. § 284. Some courts have suggested that reasonable royalties are "atypical" in trademark cases. *A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 166 F.3d 197, 208 (3rd. Cir. 1999). "Even when the courts have awarded a royalty for past trademark infringement, it was most often for continued use of a product beyond authorization, and damages were measured by the license the parties had or contemplated." *Id.; see also Howard Johnson Co. v. Khimani*, 892 F.2d 1512, 1519–20 (11th Cir. 1990). Other courts have permitted an award of a reasonable royalty, even where there is no history of prior licensing agreements, so long as the royalty is "rationally related" to the rights appropriated and the measure of damages. *See Firebirds International, LLC. V. Firebird Restaurant Group, LLC*, 397 F. Supp. 3d 847, 872 (N.D. Texas 2019) ("Defendants argue that a reasonable royalty is not permissible here because the parties had no licensing agreement nor negotiations for one . . . . But that is not a rule in this circuit."); *See Bandag, Inc. v. Al Bolster's Tire Stores, Inc.*, 750 F.2d 903, 920 (Fed. Cir. 1984) ("Royalties normally received for the use of a mark may be a proper measure, if that measure comports with the equitable limitations of section 1117 and bears a rational relationship to the rights appropriated.").

Weems references reasonable royalties only in passing:

> In the supplemental answer Weems further details the reasonable royalty damage amounts requested due to Defendant's failure to obtain a license to use Weems' mark from the report of its damages expert, Quentin Mimms.
>
> Defendant has not challenged the credentials or the opinions of Mimms and, in fact, relies on Mimms and his report in its argument. Thus, Weems has produced facts sufficient to create a genuine issue of material

> fact whether Weems suffered actual damages, and in what amount. On the
> basis of these facts alone, Defendant's motion should be denied.

Doc. 169 at 12. Weems provides no citations to the supplemental answer or the report itself. Thus, it makes no more than a precursory reference to the Mimms' report and fails to explain how that report might support a reasonable royalty. Nor does Weems cite to relevant law or offer any kind of legal analysis. *See Singer v. Harris*, 897 F.3d 970, 980 (8th Cir. 2018) (holding that when a plaintiff did not direct the court to specific portions of the record, the court would consider only those arguments that were supported by appropriate citations). Weems has not explained how an award of a reasonable royalty would be anything but purely speculative, considering that Weems has never sought to license its trademark and the parties have never contemplated such an agreement.[14] Indeed, based on its briefs, it is not clear what Weems believes the royalty should be.

Teknor contends that Weems has conceded this issue by failing to address it in its brief. I agree and find that Weems has waived any argument that it is entitled to a reasonable royalty. Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials."); *Howard v. Columbia Pub. Sch. Dist.*, 363 F.3d 797, 800 (8th Cir. 2004) ("Simply providing a massive record does not satisfy this burden, and we will not sort through a voluminous record in an effort to find support for the plaintiff's allegations.").[15] Because there is no genuine issue of material fact with respect to Weems' claim for an award of actual damages, Teknor is entitled to summary judgment on that claim.[16]

---

[14] *See* Doc. 163-1 at 4.

[15] This is especially problematic as some courts suggest that "[w]here a plaintiff has failed to present evidence of an intent to license its trademark, a reasonable royalty analysis necessarily is speculative." *Marketquest Group, Inc. v. BIC Corporation*, 316 F. Supp. 3d 1234, 1300 (S.D. Cal. 2018).

[16] In a previous order (Doc. 189), I held that that Weems was not required to prove actual damages to pursue a claim for a reasonable royalty. However, based on the summary judgment record it is now clear that Weems cannot demonstrate that it has suffered actual damages or that a reasonable royalty would be appropriate.

22

### 2. *Punitive Damages*

Teknor argues it is entitled to summary judgment on the issue of punitive damages because, under Iowa law, a court cannot award punitive damages without proof of actual damages. Doc. 163 at 20 (citing *Creme Lure Co. v. Schwartztrauber*, 257 F. Supp. 53, 55 (S.D. Iowa 1966)). Weems argues it has sufficiently demonstrated a triable issue with respect to actual damages. However, because I have found Teknor is entitled to summary judgment on the issue of actual damages, it is also entitled to summary judgment with respect to punitive damages because Iowa demands a showing of actual damages. *Podraza v. City of Carter Lake*, 524 N.W.2d 198, 203 (Iowa 1994); *see also Dunne v. Resource Converting, LLC*, 991 F.3d 931, 938 (8th Cir. 2021) ("Under Iowa law, 'an award of punitive damages does not depend on an award of compensatory damages, but rather depends on a showing of actual damages.'") (quoting *Podraza v. City of Carter Lake*, 524 N.W.2d 198, 203 (Iowa 1994)).

### V. CONCLUSION

For the reasons set forth herein:

1. Plaintiff's motion (Doc. 165) for partial summary judgment is **granted in its entirety**. As such, the following affirmative defenses are hereby **dismissed**:[17]

    (1) Fair Use and Non-Trademark Use (Seventh Affirmative Defense)

    (2) Abandonment of Trademark Registration (Eighth Affirmative Defense)

The following counterclaims are also **dismissed**:

    (1) Cancellation Based on Abandonment (Counterclaim Count V)

    (2) Cancellation Based on Registration Obtained by Fraud (Counterclaim Count VIII)

---

[17] As noted earlier in this order, Teknor's Ninth Affirmative Defense, estoppel by acquiescence, has been withdrawn and is no longer part of this case.

23

Case 1:20-cv-00108-LTS-KEM   Document 197   Filed 03/02/23   Page 23 of 24

        (3)      Cancellation based on the Creation of an Impermissible
                    Changeable/Phantom Mark (Counterclaim Count X)

    2.      Defendant's motion (Doc. 162) for partial summary judgment is **granted in its entirety**.  As such, plaintiff's claims for actual damages and punitive damages are hereby **dismissed**.

    3.      All claims and defenses not disposed of herein will remain pending for trial.

**IT IS SO ORDERED.**

**DATED** this 2nd day of March, 2023.

_____
Leonard T. Strand, Chief Judge